UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
KEVIN M. EPSTEIN
UNITED STATES TRUSTEE,
REGION 7, THE WESTERN AND SOUTHERN DISTRICTS OF TEXAS
AUBREY L. THOMAS
ASSISTANT UNITED STATES TRUSTEE
615 E. HOUSTON ST., SUITE 533
SAN ANTONIO, TX 78205
Telephone: (210) 472-4640
Facsimile: (210) 472-4649
E-mail:  Aubrey.Thomas@usdoj.gov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| IN RE: | § |
| | §   Chapter 11 |
| 4E BRANDS NORTHAMERICA LLC, | § |
| | §   CASE NO.  22-50009 |
| DEBTOR. | § |
| | § |

**THE UNITED STATES TRUSTEE'S
RESPONSE TO JACKSON WALKER LLP'S EMERGENCY MOTION TO DETERMINE
<u>LACK OF STANDING OF MAESTAS PARTIES</u>**
(Docket No. 590)

TO THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), by and through the undersigned counsel, files this Response to Jackson Walker LLP's Emergency Motion to Determine Lack of Standing of Maestas Parties (the "Standing Motion"), and represents as follows:

**I.     Preliminary Statement**

1.     The Standing Motion filed by Jackson Walker is based on a false premise — that the distribution set forth in the confirmed plan is the entire scope of recovery that creditors in this case are entitled to receive.  That premise is inaccurate because the confirmed plan of this Debtor is a plan of liquidation.  As such, the Debtor did not — and will not — receive a discharge.  Thus, if the

1

Debtor were to recover additional money for any reason, creditors would have a right to seek collection of their remaining debt from that money, even if not specifically provided for in the plan. That is what it means not to receive a discharge.

2. In this case, if Jackson Walker is required to return funds to the Debtor, there are three possible resolutions for distribution of those funds. First, there could be the proverbial "race to the courthouse" with each creditor seeking to recover any portion of those funds that it can. Second, to the extent that the confirmed plan does not currently authorize the Plan Agent to distribute the money to general unsecured creditors, the Debtor could seek to modify the confirmed plan to provide for the orderly distribution of the funds. Last, the Court could convert the case to chapter 7, which would allow a chapter 7 trustee to administer the funds in accordance with the Bankruptcy Code.

3. This case presents a textbook example of the important differences between a liquidating plan and a reorganization plan under 11 U.S.C. § 1141. Because the Maestas parties retain the right to collect their debt from the Debtor's assets, the Standing Motion is not well taken and should be denied.

## II.  Statement of Relevant Facts

4. On February 22, 2022, 4E Brands North America, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11, case number 22-50009. ECF No. 1. The Debtor was the wholly-owned subsidiary of 4E Global S.A.P.I. de C.V. ("Global"). ECF No. 5, ¶ 7.

5. On August 5, 2022, the Debtor filed its first plan of liquidation (the "Original Plan"). ECF No. 205.

6. On September 15, 2022, the U.S. Trustee objected to the Original Plan because it purported to grant the Debtor a discharge under 11 U.S.C. § 1141(d)(3). ECF No. 278.

7. On October 25, 2022, the Debtor filed its first amended plan (the "Amended Plan"). ECF No. 343. The Amended Plan contains a global settlement between the Debtor, Global, and the Unsecured Creditors Committee. The agreement provided that Global would waive any claim it had against the Debtor, fund the destruction process for certain contaminated hand sanitizer, pay professional expenses for the wind down, and pay $2.6 million into a general unsecured creditor pool (the "GUC Pool") to pay unsecured creditors on a *pro rata* basis.

8. The Amended Plan does not specifically address property recovered post-confirmation. It does, however, provide that the Debtor's assets would "revest in the Estate" upon confirmation for purposes of liquidating and distributing those funds to creditors in an orderly process. ECF No. 343, Art. IV, § A(1).

9. On October 26, 2022, the Court held a hearing on the Amended Plan. ECF No. 363. At the hearing, counsel for the U.S. Trustee again objected that the Amended Plan purported to grant the Debtor a discharge when it was not entitled to one under 11 U.S.C. § 1141(d)(3). *Id.* at 50.

10. Counsel for the debtor conceded the point, stating that "I can confirm that for the proposed order and consistent with other rulings in this court, we have removed the 1141(d) discharge from the confirmation order for a liquidating debtor." *Id.* at 51, lns. 2-5.

11. Later at the same hearing, Debtor's counsel confirmed that the "debtor is not getting a discharge" and that paragraph 74 of the confirmation order made that clear. *Id.* at 65, lns. 1-8.

12. On October 27, 2022, the Court entered an order confirming the Debtor's liquidation plan. ECF No. 353. Paragraph 74 of the confirmation order states:

> Notwithstanding any other provision of the Plan or this Order, the Debtor shall not receive a discharge pursuant to 11 U.S.C. § 1141(d)(3) of the Bankruptcy Code. Any provision in the Plan that violates 11 U.S.C. § 1141(d)(3) of the Bankruptcy Code shall have no force or effect. In the event there is a conflict between the provisions of this Order and the Plan (including any attachments, exhibits, or supplements to the Plan), this Order shall control.

### III.     Legal Argument

13. In the Standing Motion, Jackson Walker improperly concludes that creditors in this case, like the Maestas Parties, have no right to any money returned to the debtor. The firm's reliance on the holding of *In re SunEdison, Inc.*, Case No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019), is misplaced. In *SunEdison*, the debtors confirmed a plan of reorganization and, "[a]s a result, the Debtors became the Reorganized Debtors, all unsecured claims against the Debtors were discharged, and the unsecured creditors holding allowed claims received their *pro rata* interests in the Trust." *Id*. at *3 (internal citations omitted). That fact is critical to the analysis in *SunEdison* because the confirmation of the plan (and thus discharge of the creditor's claim) limited the creditor to only the recovery allowed for under the confirmed plan.

14. Importantly (and unlike the debtor in *SunEdison*), the confirmation of the Debtor's Amended Plan did not result in a discharge under section 1141(d) because it is a liquidating plan of a corporate entity. Although the parties may not have realized the importance of this fact at the time of confirmation, this case demonstrates why this distinction is of paramount importance. Without a discharge, all the claims against the Debtor are still valid and enforceable, and creditors may seek to recover from any post-confirmation, newly discovered asset that was not administered under the confirmed Amended Plan.

15. If Jackson Walker is required to return funds to the Debtor, there are three possible resolutions for distribution of those funds. First, there could be the proverbial "race to the courthouse" with each creditor seeking to recover any portion of those funds that it can. Second, to the extent that the confirmed plan does not currently authorize the Plan Agent to distribute the money to general unsecured creditors, the Debtor could seek to modify the confirmed Amended Plan to provide for the orderly distribution of the funds. Last, the Court could convert the case to

chapter 7, which would allow a chapter 7 trustee to administer the funds in accordance with the Bankruptcy Code. In each of those three scenarios, creditors in this case like the Maestas Parties have a cognizable interest in any funds that Jackson Walker may be required to return to the Debtor.[1]

### V.  Conclusion

16. Because the Debtor has not, and will not, receive a discharge, the confirmed Amended Plan did not extinguish creditors' ability to collect from any future recoveries by the debtor. Therefore, the Court should deny the Standing Motion.

Dated: January 9, 2024

Respectfully submitted,
KEVIN M. EPSTEIN
United States Trustee Region 7
Southern and Western Districts of Texas

By: /s/ Aubrey L. Thomas
Aubrey L. Thomas
Assistant United States Trustee
San Antonio and Corpus Christi
Texas State Bar No. 24130279
615 E. Houston St., Suite 533
San Antonio, TX 78205
Telephone: (210) 472-4640
Facsimile: (210) 472-4649
E-mail:  Aubrey.Thomas@usdoj.gov

---

[1] On December 20, 2023, the Court entered an Order Requiring Any Party-In-Interest Who Asserts Standing or Indispensable Party Status to File a Notice Stating a Basis for Indispensable Party Status or Standing in Connection with Jackson Walker LLP Fee Matters. ECF No. 582. In that order, the Court provided that Jackson Walker LLP and the U.S. Trustee may each file a brief no later than January 10, 2024 identifying any person or entity that they allege to be an indispensable party.  This Response is distinct from that brief, which will be filed on January 10, 2024.

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing RESPONSE TO JACKSON WALKER LLP'S EMERGENCY MOTION TO DETERMINE LACK OF STANDING OF MAESTAS PARTIES was served by electronic means for all Pacer system participants and/or by first class mail, postage prepaid, to all parties listed below on this the 9th day of January 2024.

/s/Aubrey L. Thomas
Aubrey L. Thomas