IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| In re:<br><br>4E BRANDS NORTHAMERICA, LLC,[1]<br><br>Debtor. | § <br> §   Chapter 11 <br> § <br> §   Case No. 22-50009 (MI) <br> § <br> § |

**JACKSON WALKER LLP'S BRIEF REGARDING INDISPENSABLE
PARTIES AND PARTIES WITH STANDING RELATED TO THE
<u>JACKSON WALKER FEE DISPUTES</u>**

[Relates to Dkt. No. 582]

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Pursuant to this Court's *Order Requiring Any Party-in-Interest Who Asserts Standing or Indispensable Party Status to File a Notice Stating a Basis for Indispensable Party Status or Standing in Connection with Jackson Walker LLP Fee Matters* [Dkt. No. 582] (the "<u>Order Requiring Notice</u>"), Jackson Walker LLP ("<u>JW</u>") files this Brief, and in support thereof, states as follows:

**PRELIMINARY STATEMENT**

1. A number of parties, including Kevin M. Epstein, the United States Trustee for Region 7 (the "<u>U.S. Trustee</u>"),[2] Barry Green, as Wrongful Death Representative of the Estate of Joshua Maestas, and Carolina Maestas (together, the "<u>Maestas Parties</u>"),[3] and the Official Committee of Unsecured Creditors of 4E Brands Northamerica LLC (the "<u>4E Committee</u>"),[4] have

---

[1] The Debtor in this Chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is 4E Brands Northamerica LLC (0310). The Debtor's principal place of business is 17806 Interstate Highway 10, Suite 300, San Antonio, TX 78257. The Debtor's service address is: 41 W. Putnam Ave., STE 103, Greenwich, CT 06830.

[2] *See* Dkt. No. 517.

[3] *See* Dkt. No. 510.

[4] *See* Dkt. No. 549.

asserted challenges to various orders entered by this Court approving JW's employment as counsel for 4E Brands Northamerica LLC (the "Debtor") and JW's requests for compensation for services rendered and reimbursement for expenses incurred (collectively, the "Challenged Orders").[5] Neither the Debtor nor any of these parties are "necessary" or "indispensable" parties under Federal Rule of Civil Procedure 19.[6]

2. The Court's Order Requiring Notice invited other parties claiming to be an indispensable party or otherwise claiming to have standing to challenge the Challenged Orders to file a notice (a "Notice") no later than January 10, 2024 asserting the basis for such indispensable party status or standing. Consideration of whether the U.S. Trustee, the Maestas Parties, the 4E Committee, or any other party who files such a Notice has standing, post-confirmation, to seek vacatur of the Challenged Orders requires an analysis of the *First Amended Combined Disclosure Statement and Joint Plan of Liquidation of 4E Brands Northamerica LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 343] (as amended, the "Plan") and the *Order Confirming the Debtor's Combined Disclosure Statement and Joint Plan of Liquidation of 4E Brands Northamerica LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 353] (the "Confirmation Order"). Any party seeking to vacate the Challenged Orders bears the burden of

---

[5] The Challenged Orders include: (i) Order Granting Application to Retain Jackson Walker LLP as Counsel for the Debtor and Debtor-in-Possession [Dkt. No. 120]; (ii) Order Granting Jackson Walker LLP's First Interim Fee Application for Allowance and Payment of Fees and Expenses as Co-Counsel to the Debtors for the Period from February 22, 2022 through May 31, 2022 [Dkt. No. 367]; (iii) Order Granting Jackson Walker LLP's Second Interim Fee Application for Allowance and Payment of Fees and Expenses as Counsel to the Debtor for the Period from June 1, 2022 through October 26, 2022 [Dkt. No. 428]; and (iv) Final Order Allowing Compensation and Reimbursement of Expenses [Dkt. No. 427].

[6] While Federal Rule 19 automatically applies to adversary proceedings pursuant to Bankruptcy Rule 7019, it is not automatically applicable to contested matters under Bankruptcy Rule 9014(c). However, under Bankruptcy Rule 9014(c), "the court may at any stage in a particular matter direct that one or more of the other rules in part VII shall apply," and may do so by giving "parties notice of any order issued under this paragraph to afford them a reasonably opportunity to comply with the procedures prescribed by the order." JW assumes for the purposes of this Brief that the Order Requiring Notice constitutes such an order under Bankruptcy Rule 9014(c).

proof to establish a basis for its constitutional, prudential, **_and_** section 1109 standing, in light of the confirmed Plan and related Confirmation Order.

3. This Brief sets forth JW's legal position that (i) there are no necessary or indispensable parties to this proceeding; and (ii) parties seeking vacatur of the Challenged Orders or similar relief must establish certain elements of standing as a threshold matter before proceeding on their claims. JW is not, through this Brief, engaging in an in-depth analysis on any particular party's asserted basis for standing, but reserves the right to do so following any Notices that may be filed pursuant to the Order Requiring Notice.[7]

## INDISPENSABLE PARTIES

### A. Federal Rule 19 Governs Joinder of Necessary or Indispensable Parties.

4. Federal Rule 19(a), which governs joinder of required (*i.e.*, "necessary") parties, provides, in pertinent part:[8]

> (a) Persons Required to Be Joined if Feasible.
>
>> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>>
>>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>>
>>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>>
>>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>>
>>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple,

---

[7] JW has already challenged the standing of the Maestas Parties in its *Emergency Motion to Determine Lack of Standing of Maestas Parties* [Dkt. No. 590], which is set for hearing on January 10, 2024 at 8:00 a.m. *See* Dkt. No. 592.

[8] FED. R. CIV. P. 19(a); *see also HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).

> or otherwise inconsistent obligations because of the interest.

5. The Federal Rule 19 analysis is a two-step process: first, under Rule 19(a), is the party "necessary," *i.e.*, the party should be joined; and second, under Rule 19(b), if the party is "necessary" but cannot be joined to the proceeding, is the necessary party "indispensable," *i.e.*, the claim raised cannot be adjudicated without the party.[9]

**B.     There are No Necessary or Indispensable Parties to this Proceeding.**

6. At the status conference held by this Court on December 12, 2023, the Court expressed concern about wanting to "have all the parties here" from the outset as an "up-front determination," rather than "wait[ing] 'til the end to figure [out who may be an indispensable party] because we could go through a lot of litigation or a lot of settlement discussions and not have the right parties here."[10]  Pursuant to Rule 19, JW does not believe there are any necessary or indispensable parties missing from this proceeding.  As discussed below, whether a party may be an ultimate beneficiary of funds disgorged, if any, is determinative of such party's standing, but does not have an impact on such party's status as a necessary or indispensable party.

7. As to the first step of the analysis under Rule 19(a) for an absent party, the Court must ask:

> i. Is the Court unable to accord complete relief between JW and the challenging parties by vacating the Challenged Orders in the party's absence?
>
> ii. Does the absent party claim an interest relating to vacatur of the Challenged Orders?
>
> > ▪ If so, would disposing of the action in such party's absence either:

---

[9] *See HS Res., Inc.*, 327 F.3d at 439; *Shelton v. Exxon Corp.*, 843 F.2d 212, 218 (5th Cir. 1988).

[10] *See* Dec. 12 Hr'g Tr. at 7:25-8:7; 10:15-23; 11:13-23.

- Leave JW subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations?

- Impair or impede such party's ability to protect its interest as a practical matter?

Only if the ultimate answer is "yes" to these questions should the Court require such party's participation in this proceeding.[11]

8. There is no question that the Court could accord complete relief as between JW and any party who has standing to move to vacate the Challenged Orders in the absence of any other party. If a party with standing moves to modify the Challenged Orders, the relief, if any, will not be limited to the interest that party has in the amendment of the Challenged Orders. In other words, this Court would order JW to pay a total amount, not an amount that is limited to the moving party's interest in the total payment. This is true even for the ultimate beneficiaries of the reduced fees, if any[12]—the reduction, or allowance of JW's fees is not impacted in any way by the participation, or lack thereof, of such beneficiaries in this proceeding. Indeed, a party may benefit even without participation in moving to vacate the Challenged Orders under the terms of the applicable plan.

9. Further, the Court is able to accord complete relief between the existing parties here related to the Challenged Orders based on the current motions already before the Court, without any participation of absent parties. The Court's ability to accord "complete relief" refers "only to the relief between persons already parties, and not as between a party and the absent person whose

---

[11] The factors under Rule 19(b) as to whether a party is "indispensable" only come into consideration if a required or necessary party cannot be joined to a proceeding because such joinder would destroy the court's jurisdiction. *See HS Res.*, 327 F.3d at 439. Because each party filing a notice in response to the Order Requiring Notice would necessarily not be "absent" from this proceeding, JW does not believe that Rule 19(b) is implicated.

[12] JW reserves its right to submit further argument to the Court regarding the flow of funds disgorged, if any, under the confirmed Plan and Confirmation Order.

joinder is sought."[13] Therefore, under the first prong of Rule 19(a)(1)(A), there are no parties whose absence would prevent the Court from according complete relief related to the Challenged Orders.

10. Turning to Rule 19(a)(1)(B), the Court has required any party who claims an interest "that Jackson Walker LLP should return to this bankruptcy estate all or part of the compensation that it was previous awarded in this case" to file a Notice no later than January 10, 2024. Under Rule 19(a)(1)(B), only parties claiming such an interest may be considered as required or necessary parties.[14] In any event, the Court will presumably allow for the participation of any party that files such a timely Notice on January 10 establishing such purported interest (and only after determining such party also has the requisite standing), and thus such party would not be "absent" from this proceeding or unable to be joined to the proceeding under Rule 19. Such party would therefore be able to assert its own interest in vacatur and/or disgorgement, and JW would not be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.[15] Accordingly, JW submits that there are also no necessary or required parties under Rule 19(a)(1)(B).

---

[13] *CGI Logistics, LLC v. Martinez*, No. 5:23-CV-43, 2023 WL 6615364, at *4 (S.D. Tex. Sept. 22, 2023) (citation omitted).

[14] *See In re Ginn-La St. Lucie Ltd., LLLP*, 420 B.R. 598, 606 (Bankr. S.D. Fla. 2009) ("Because an absent party must claim an interest in the subject matter of the action between such party is determined to be necessary and indispensable, the Court concludes that the Non-Party Owners, having not claimed an interest in the subject matter of this action, are not required parties under Rule 19(a)(1)(B).") (citations omitted); *see also U.S. v. Keathley*, No. CIV.A. C-11-107, 2011 WL 2600552, at *3 (S.D. Tex. June 29, 2011).

[15] A bankruptcy court's order disallowing or reducing fees requested by a fee application, or an order denying or approving employment of a debtor's proposed professional, is binding on all parties in interest and may have res judicata effect. *See In re Intelogic Trace, Inc.*, 200 F.3d 382, 387-88 (5th Cir. 2000) (finding that an order approving a fee application had res judicata effect on a malpractice action); *In re Image Innovations Holdings, Inc.*, 391 B.R. 255, 260 (Bankr. S.D.N.Y. 2008) ("Three Circuit Courts and a District Court in this Circuit have held that orders deciding final fee applications preclude malpractice claims based on the same legal services."). Thus, it is unlikely in any event that JW will be subject to a risk of incurring double, multiple, or inconsistent obligations as any decision from this Court regarding fees awarded to JW in this case will be binding and preclusive in future proceedings.

11. Because there are no necessary or required parties under Rule 19(a), the Court need not consider whether any party is indispensable under Rule 19(b).[16]

12. For the foregoing reasons, JW submits that there are no necessary or indispensable parties absent from this proceeding.

## PARTIES WITH STANDING

**A. Each Party Seeking Vacatur of the Challenged Orders Bears the Burden of Proof on Establishing its Constitutional, Prudential, and Section 1109 Standing.**

13. Standing is a threshold issue that must be determined before a decision on the merits can be reached.[17] Standing includes both constitutional and prudential components. Further, under section 1109(b) of the Bankruptcy Code, only a "party in interest" has standing to raise, appear, and be heard on issues in a bankruptcy case.[18]

14. As this Court recognized in *Fieldwood*,[19]

> Constitutional standing requires that "an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Constitutional standing also requires that a plaintiff's injury must not be "conjectural or hypothetical." A particularized injury "must affect the plaintiff in a personal and individual way." A court has no subject matter jurisdiction when the party bringing claims lacks standing to assert those claims.

---

[16] *See HS Res.*, 327 F.3d at 439.

[17] *See Audler v. CBC Innovis Inc.*, 519 F.3d 239, 247-48 (5th Cir. 2008) ("Because standing is a jurisdictional requirement, we must address it before considering the merits of an appellant's claim."); *see also Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016).

[18] *See* 11 U.S.C. § 1109(b).

[19] *In re Fieldwood Energy LLC*, No. 20-33948, 2021 WL 4839321, at *6 (Bankr. S.D. Tex. Oct. 15, 2021) (Isgur, J.) (internal citations omitted).

Each of the three elements must exist for a party to establish constitutional standing.[20] An assertion of an "injury to the public's confidence in the integrity of the [c]ourt's process" is insufficient to establish a particularized injury.[21]

15. Establishing constitutional standing is not enough on its own; a party must also have prudential standing.[22] Prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights."[23] In other words, "a plaintiff generally must assert his own legal right and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."[24]

16. Lastly, in bankruptcy cases, pursuant to section 1109(b) of the Bankruptcy Code, a party has standing only if it is a "party in interest."[25] While "party in interest" is not defined in the Bankruptcy Code, courts have held that it generally means "anyone who has a legally protected interest that could be affected by the bankruptcy case."[26] Section 1109 standing is similar to prudential standing in that it "requires more than identity; it also requires interest . . . that is particular and direct to that creditor."[27] Further, "courts may prohibit a prospective 'party in

---

[20] *Williams*, 843 F.3d at 621.

[21] *In re Old ANR, LLC*, No. 19-00302-KRH, 2019 WL 2179717, at *6 (Bankr. E.D. Va. May 17, 2019).

[22] *Cibolo Waste, Inc.*, 718 F.3d at 474.

[23] *Id.*; *see also St. Paul Fire & Marine Ins. Co. v. Labuzan*, 579 F.3d 533, 539 (5th Cir. 2009).

[24] *Superior MRI Servs., Inc. v. All. Healthcare Servs.*, Inc., 778 F.3d 502, 504 (5th Cir. 2015) (quoting *United States v. Johnson*, 632 F.3d 912, 919-20 (5th Cir. 2011)).

[25] *See* 11 U.S.C. § 1109.

[26] *Matter of Xenon Anesthesia of Tex., P.L.L.C.*, 698 F. App'x 793, 794 (5th Cir. 2017); *see In re Megrelis*, No. 13-35704-H3-7, 2014 WL 4558927, at *2 (Bankr. S.D. Tex. Sept. 12, 2014).

[27] *In re Friede Goldman Halter Inc.*, 600 B.R. 526, 531-32 (Bankr. S.D. Miss. 2019) (citing *In re E.S. Bankest, L.C.*, 321 B.R. at 595 (noting that "[t]he Bankruptcy Code is replete with examples where a creditor may not have standing to object," including to portions of a chapter 11 plan that do not affect the creditor's direct interests)).

interest' from participating in a chapter 11 case for a lack of standing 'if he or she has *no* cognizable interest (whether directly or indirectly) in the outcome of the proceeding.'"[28]

17. This Court has previously recognized the standing requirements in the context of fee objections, finding that "[i]n the bankruptcy context, a party does not have standing to object to an application for compensation unless that party has a financial stake in the approval of the application."[29] This Court further explained that "[a] party lacks a financial stake when, regardless of the outcome of the application for compensation, that party will not receive a distribution from the estate."[30]

**B.     The Plan and Confirmation Order Govern Each Party's Asserted Basis or Standing.**

18. A party's standing can change throughout the course of a bankruptcy case and must be evaluated at every stage.[31] Particularly in the case of a confirmed plan, a party's standing post-confirmation may be drastically different than it was pre-confirmation.[32] Thus, when considering a party's standing post-confirmation, courts must "consider the disclosure statement as well as the terms of a plan of reorganization," and the order confirming such plan.[33]

---

[28] *In re Old ANR, LLC*, 2019 WL 2179717, at *4 (citation omitted).

[29] *See In re Moye*, No. 07-37364, 2012 WL 3217595, at *2 (Bankr. S.D. Tex. Aug. 7, 2012).

[30] *Id.* (citing *In re Runnels Broadcasting Sys., LLC*, 2009 WL 4611447, at *3 (Bankr. D.N.M. Dec. 1, 2009)).

[31] *See In re Foster*, 516 B.R. 537, 544 (B.A.P. 8th Cir. 2014), aff'd, 602 Fed. Appx. 356 (8th Cir. 2015) ("Standing is a component of subject matter jurisdiction that may be challenged at any time during the proceeding.").

[32] *See Dynasty Oil & Gas, L.L.C. v. Citizens Bank (In re United Operating, L.L.C.)*, 540 F.3d 351, 355 (5th Cir. 2008) ("[A]fter confirmation of a plan, the ability of the debtor to enforce a claim once held by the estate is limited to that which has been retained in the [bankruptcy] plan. . . . If a debtor has not made an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved.").

[33] *In re Tex. Wyoming Drilling, Inc.*, 647 F.3d 547, 551 (5th Cir. 2011) (quoting *Floyd v. CIBC World Mkts., Inc.*, 426 B.R. 522, 537-38 (S.D. Tex. 2009)) (internal quotation marks omitted).

19. Similarly, a party's standing as a "party in interest" changes post-confirmation.[34] For example, pre-confirmation, a reduction in professional fees under 11 U.S.C. § 330 would increase (or at least, prevent a decrease in) estate assets, which, prior to a plan being confirmed, could be available for distribution to creditors in a case; therefore, creditors hold "a legally protected interest that could be affected by the bankruptcy case." Post-confirmation, however, the plan dictates not only where professional fees are returned, if disgorged or disallowed, but also sets recoveries to different classes of creditors. In a situation where a plan entitles disgorged or disallowed professional fees to flow to a particular class of creditors, such class of creditors—or perhaps their representative in the event of a plan trustee or plan agent—would likely continue to have legally protected interests post-confirmation. Such is not the case here where recoveries to unsecured creditors (whether Class 3 Covered Personal Injury Claims or Class 4 General Unsecured Claims) are expressly capped by the Plan and Confirmation Order.[35] Rather, to determine where disgorged funds, if any, may ultimately flow, the Court must undertake an in-depth analysis of the Plan and Confirmation Order, and only such parties as may have a "legally protected interest" that could be affected by disgorgement of funds may assert claims against those funds or against the Challenged Orders.

20. The Court need look no further than the *SunEdison* case out of the U.S. Bankruptcy Court for the Southern District of New York for an analysis of when a creditor has standing post-confirmation to challenge employment or fee orders.[36] In recognizing the three required components of standing, the court in *SunEdison* concluded that a creditor lacked standing post-

---

[34] *See Friede Goldman Halter Inc.*, 600 B.R. at 532 (finding that a creditor during the pendency of a bankruptcy case lacked standing to move to reopen the case where it did not seek additional distributions on its claim and could not assert any stake in reopening the case premised on the relief to which it would be entitled as a creditor).

[35] *See* Plan Art. III.C.3-4.

[36] *See In re SunEdison, Inc.*, Case No. 16-10992 (SMB), 2019 WL 2572250 (Bankr. S.D.N.Y. June 21, 2019).

confirmation to pursue a Federal Rule 60 motion seeking vacatur of orders approving the retention of and payment of fees and expenses to McKinsey Recovery & Transformation Services U.S., LLC ("McKinsey"), one of the debtors' restructuring advisors, on the basis that McKinsey failed to disclose disqualifying connections under Bankruptcy Rule 2014. The court analyzed the confirmed plan and confirmation order, noting that, under the plan, unsecured creditors did not receive a distribution directly from the debtors but instead received pro rata interests in a GUC/litigation trust, which held assets transferred by the debtors, including the estates' causes of action against McKinsey.

21. The court also considered two settlements reached among the parties involved in the *SunEdison* bankruptcy case. First, the court noted a settlement between McKinsey and the United States Trustee regarding McKinsey's alleged non-disclosures, which resulted in payment by McKinsey to the reorganized debtor, which would be "distributed in accordance with the terms of the confirmed plan[ ] or further order in accordance with applicable law," and a release by the U.S. Trustee of McKinsey from further liability based on the failure to make complete disclosure or fully comply with Bankruptcy Rule 2014.[37] Second, the court described a settlement between McKinsey and the GUC/litigation trust, pursuant to which McKinsey agreed to make a payment to the GUC/litigation trust in exchange for the trust releasing its causes of action against McKinsey.

22. In analyzing the moving creditor's standing in light of the confirmed plan and the settlements, the court concluded that the creditor was "not a party in interest and lacks prudential standing to assert derivative claims arising from injuries to the debtor or its estate, including claims based on fraud on the court."[38] The court specifically found that, to the extent that there was a pre-

---

[37] *Id.* at *4.

[38] *Id.* at *6.

petition payment by the debtors to McKinsey of fraudulent bills or a post-petition nondisclosure by McKinsey, such actions harmed the debtors and the estates, not the individual creditor. The creditor, therefore, could not "identif[y] a particularized injury that it suffered distinct from the injuries, if any, that all unsecured creditors suffered and [therefore,] it lack[ed] standing to assert a fraud on the court claim based on a secondary effect of an injury to the Debtors (pre-petition) or their estates (post-petition)."[39]

23. Lastly, the court noted that, even if the creditor could establish an injury, it could not establish redressability, as the creditor "cannot recover anything more [from McKinsey], even indirectly, through its interest in the [t]rust."[40] The court rejected the creditor's argument that the court could award sanctions against McKinsey and order that such sanctions be distributed broadly to all unsecured creditors on numerous grounds, including: (1) unsecured creditors were out of the money, with the second lien lenders being the fulcrum class and thus the injured parties; (2) the potential for sanctions was only a "speculative possibilit[y]," which "is precisely the type of standing argument rejected by the Supreme Court;" (3) the "speculative distribution scheme" ignored the confirmation order and plan, which "distributed certain assets to the [GUC/litigation trust] and the second lien lenders and the balance of the estate's rights vested in the Reorganized Debtors;" and (4) the court's "inherent authority to remedy a fraud on the [c]ourt . . . does not mean that any creditor or every creditor has the right to litigate the same claim of fraud on the court even though it has not suffered a particularized injury."[41]

24. The U.S. Bankruptcy Court for the Eastern District of Virginia considered an identical challenge by the same creditor (Mar-Bow) to McKinsey's retention and fees in the

---

[39] *Id.*

[40] *Id.*

[41] *Id.* at *8.

chapter 11 cases of Alpha Natural Resources, Inc. and its affiliates debtors.[42] There, the court reached the same determination as the *SunEdison* court: that the creditor lacked standing to be heard on its Federal Rule 60 motion in light of the confirmed plan that fixed recoveries for the class to which the creditor belonged and "[i]n no event" entitled the creditor to receive "any excess cash that [could] ever enter[ ] the bankruptcy estates in the future.[43] The court's ruling followed a prior ruling by the district court in *Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Services US, LLC*, 578 B.R. 325, 354 (E.D. Va. 2017), *aff'd sub nom. In re Alpha Nat. Res., Inc.*, 736 Fed. Appx. 412 (4th Cir. 2018) ("Mar-Bow 1") that the creditor lacked standing to appeal on the basis of a failure to disclose under Bankruptcy Rule 2014 because the creditor "lost any pecuniary interest in the outcome of the Rule 2014 Appeal on July 12, 2016, when the Reorganized Plan was confirmed . . . [and] the expected recovery for Mar-Bow's class of claim became fixed."[44]

25. The U.S. Bankruptcy Court for the District of Delaware also determined the identical issue raised by Mar-Bow against McKinsey in the chapter 11 cases of the Standard Registry Company and its affiliates.[45] This court similarly found that the creditor lacked a "legal protected interest" in this matter because the creditor "as a general unsecured creditor, ha[d] no interest in potential proceeds from sanctions and disgorgement."[46]

---

[42] *See In re Old ANR, LLC*, No. 19-00302-KRH, 2019 WL 2179717, at *1 (Bankr. E.D. Va. May 17, 2019).

[43] *Id.* at *2.

[44]  *Mar-Bow I*, 5578 B.R. at 355.

[45] *See In re SRC Liquidation LLC*, No. 15-10541 (BLS), 2019 WL 4386373, at *1 (Bankr. D. Del. Sept. 12, 2019).

[46] *Id.* at *4 ("Mar-Bow's alleged interest in the potential sanction proceeds is too hypothetical to satisfy the *Lujan* standing test.  To receive anything, Mar-Bow would need to succeed in proving RTS committed fraud on the Court, that sanctions and disgorgement are the appropriate remedy, and then convince this Court to take the extraordinary step of disregarding the confirmed Plan and distributing those proceeds to unsecured creditors. Such an attenuated path to recovery on its claim does not establish an 'actual or imminent injury.'").

26. Pursuant to *SunEdison*, *Old ANR*, and *SRC Liquidation*, all of which considered a creditor's standing post-confirmation to challenge retention or fee orders, this Court must analyze any "injuries" alleged by a party in connection with JW's fees or retention in light of the confirmed Plan and Confirmation Order and, before the Court may proceed on the merits, it must determine whether such party can establish all three forms of standing: constitutional, prudential, and party-in-interest.

C. **The Confirmed Plan and Confirmation Order Do Not Allow for Recoveries of Disgorged Funds to Flow to Unsecured Creditors.**

27. Article III.C.3. of the Plan provides that holders of Class 3 Covered Personal Injury Claims are entitled to continue or commence actions against the Debtor to determine the Debtor's liability on account of such claim and, if liable, the amount of such claim. To the extent that such action results in settlement or judgment, each holder of an Allowed Covered Personal Injury Claim will receive (i) either a pro rata share of the total insurance coverage available under the Debtor's policies or 100% of their allowed claim; (ii) their pro rata share of the Insurance Deductible Pool (a finite pool of $100,000), if applicable; and (iii) standing to pursue any cause of action of the Debtor against an insurer for non-payment of clauses (i) or (ii).[47] Thus, holders of Class 3 Covered Personal Injury Claims cannot receive any additional recovery under the confirmed Plan, even if fees were to be disgorged by JW. Holders of Class 3 Claims therefore lack standing to seek to vacate the Challenged Orders or otherwise seek disgorgement of fees and expenses from JW.

28. Similarly, Article III.C.4. of the Plan provides that, "[o]n the applicable Distribution Date, each Holder of an Allowed General Unsecured Claim will receive (i) its Pro Rata share of the GUC Pool and (ii) a waiver of any Avoidance Action against such Holder."[48]

---

[47] Plan, Art. III.C.3.

[48] Plan, Art. III.C.4.

The "GUC Pool" is defined under the Plan as "$2.6 million to be funded pursuant to the 4E Global Settlement."[49]  Pursuant to the 4E Global Settlement, the Debtor's parent and DIP Lender, 4E Global S.A.P.I. de C.V. ("4E Global"), agreed to, among other things, provide $2.6 million to fund the GUC Pool.[50]  The Confirmation Order expressly approved the 4E Global Settlement.[51]  As with holders of Class 3 Claims, Holders of Class 4 Claims also do not have standing to seek to vacate the Challenged Orders or otherwise seek disgorgement of fees and expenses from JW, as there is no possibility for disgorged funds to flow back to Class 4 Holders under the terms of the Confirmed Plan.

29.     Likewise, the 4E Committee, as a representative body of all unsecured creditors, lacks standing to seek vacatur of the Challenged Orders or disgorgement of fees from JW where their constituents—holders of Class 3 and Class 4 claims—lack standing.

30.     While the Confirmation Order provides that the Debtor shall not receive a discharge pursuant to 11 U.S.C. § 1141(d)(3) of the Bankruptcy Code, the Plan nonetheless governs treatment of and distributions to unsecured creditors "in full and final satisfaction" and "release" of Allowed Claims filed against the Debtor.[52]  The Plan also includes an express injunction that prohibits holders of Claims that have been released from taking any actions against the Debtor to collect on those claims, even though the Debtor's personal liability for the debt is not discharged.[53]  The speculation that there may be funds left with the Debtor at some point in the future that would need to be dealt with under state law governing dissolution of the Debtor does not create standing

---

[49] Plan Art. I.A.51.

[50] *See* Plan Art. II.B.5.

[51] *See* Confirmation Order ¶ 55.

[52] Plan Art. III.C.

[53] *See* Plan Art. VIII.F.6; Confirmation Order ¶ 65.

in this bankruptcy case for creditors of the to-be-dissolved Debtor to seek to vacate the Challenged Orders or otherwise seek disgorgement of compensation received by JW. Rather, in order to pursue any excess funds at the time of dissolution, a creditor would need to hold a judgment against the Debtor (which may involve a process that would itself deplete any excess funds as the Debtor would be entitled to a full defense of such claims that would be paid by Debtor funds as part of the liquidation process[54]) and, at that time, establish a superior right to the excess funds as governed by state law and as determined by a state court. That process is entirely outside of this bankruptcy proceeding, and the mere possibility of obtaining a judgment at some point in the future, prior to the Debtor's dissolution, is insufficient to maintain an "injury in fact" in this proceeding, as required by the U.S. Constitution.

31. Lastly, the Plan provides express instructions on how Professional Fee Claims were to be treated.[55] Post-confirmation but pre-Effective Date, the Debtor was to "establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount."[56] The Professional Fee Escrow Account was to be maintained in trust solely for Professionals,[57]

---

[54] *See* Plan Art. IV.A.1 ("[O]n the Effective Date, the Assets shall revest in the Estate for the purpose of liquidating the Estate, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, the Debtor may, at the direction of the Plan Agent, and subject to the Confirmation Order, use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.").

[55] *See* Plan Art. III.A.1.c.iii; *see also* Plan I.A.76 (defining Professional Fee Claims as "any Administrative Expense Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees have not been paid pursuant to an order of the Bankruptcy Court. To the extent that the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.").

[56] *See* Plan I.A.77 (defining Professional Fee Escrow Account as "an account funded by the Debtor with Cash as soon as possible after Confirmation and no later than the Plan Effective Date in an amount equal to the Professional Fee Escrow Amount") and Plan I.A.78 (defining Professional Fee Escrow Amount as "the reasonable estimate of the aggregate amount of Professional Fee Claims relating to the period prior to the Effective Date, which estimates Professionals shall deliver to the Debtor as set forth in Article IIIA.1 of this Plan.").

[57] *See* Plan I.A.75 (defining Professional as "any Entity (a) employed in the Chapter 11 Case by the Debtor pursuant to a Final Order in accordance with sections 327, 328, 363 or 1103 of the Bankruptcy Code (other than a professional entitled to receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order) or (b) for which compensation or reimbursement has been Allowed by the Bankruptcy Court in the Chapter 11 Case

including JW, until all Allowed[58] Professional Fee Claims were paid in full. Further, the Plan expressly provided that "Funds held in the Professional Fee Escrow Account shall not be considered property of the Estate, the Debtor, . . . or the Plan Agent." After all Allowed Professional Fee Claims were paid in full, the Plan provides that "any remaining amount in the Professional Fee Escrow Account shall be promptly paid to the Debtor without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity."[59] Further, to the extent that any payment to JW on account of its final fee application was paid out of the pre-petition retainer held by JW and funded by 4E Global, those amounts would also not be property of the Estate, the Debtor, or the Plan Agent.

32. Accordingly, because unsecured creditors and the 4E Committee do not have a "financial stake" in the resolution of the Challenged Orders or the disgorgement of JW's fees,[60] as they will not receive a distribution from the estate on account of any fees disgorged, they lack standing to proceed with their challenges here.

---

for services to the Debtor, and expenses incurred in connection with such services, pursuant to section 503(b)(4) of the Bankruptcy Code.").

[58] *See* Plan I.A.5 (defining Allowed as "with respect to Claims: (a) any Claim (i) for which a proof of Claim has been timely filed on or before the applicable Bar Date (or for which a proof of Claim is not required to be filed pursuant to the Bankruptcy Code or a Final Order) or (ii) that is identified in the Schedules as of the Effective Date as not disputed, not contingent and not unliquidated, and for which no proof of Claim has been timely Filed; provided that, in each case, any such Claim shall be considered Allowed only if and to the extent that no objection to the allowance thereof has been filed or such an objection has been filed and the Claim thereafter has been Allowed by a Final Order; or (b) any Claim expressly deemed allowed by the Plan or allowed by a Final Order of the Bankruptcy Court (including pursuant to any stipulation or settlement agreement approved by the Bankruptcy Court). Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered Allowed Claims.").

[59] Plan Art. III.A.1.c.iii.

[60] *See In re Moye*, No. 07-37364, 2012 WL 3217595, at *2 (Bankr. S.D. Tex. Aug. 7, 2012).

## **RESERVATION OF RIGHTS**

JW reserves its rights to contest any basis for indispensable party status or standing asserted by a party in this case in connection with additional Notices filed pursuant to the Court's Order Requiring Notice.

*[Remainder of Page Intentionally Left Blank]*

Dated: January 10, 2024	Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

/s/ *Jason L. Boland*
Jason L. Boland (SBT 24040542)
William R. Greendyke (SBT 08390450)
Julie Harrison (SBT 24092434)
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Email: jason.boland@nortonrosefulbright.com
Email: william.greendyke@nortonrosefulbright.com
Email: julie.harrison@nortonrosefulbright.com

*Counsel for Jackson Walker LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Jason L. Boland*
Jason L. Boland